Haywood, J.
Upon a caveat against the probate of the supposed will of John Mc’Crackin, deceased, filed by the plaintiffs in the Court of Pleas and Quarter Sessions for the county of Washington, on the second Monday of April, 1820, and issue made up of “ devisavit vel non” ; the jury empanelled to try the same found a verdict, upon which the Court gave judgment, which was appealed from. And in the Circuit Court of the county of Washington, August, 1820, another jury empanelled to try the same issue found a special verdict; that is to say, that the instrument of writing purporting to be the last will and testament of John Mc’Crackin, deceased, as it was originally drawn, was executed in due form in the presence of John Patton and Samuel G. Chester, the subscribing witnesses. They also find, after the said paper had been thus executed and attested, that the testator, John Mc’Crackin, on the 2d of February, 1820, sent for John Patton, one of the subscribing witnesses, and directed him to alter the said instrument in the following particulars, to wit: in the fifth bequest, which now stands in these words: “ It is my will that my son, Henry *242 Mc’Crackin, have the house and lot that he now lives on, by paying two hundred dollars; to be paid fifty dollars per year, after my death, to be paid into the hands of my executors ”; which bequest, in the original instrument, stood thus: “it is my will that my son, H. Mc’Crackin, have the house and lot he now lives on, by paying four hundred dollars ; to be paid, fifty dollars per year, after my death, to be paid into the hands of my executors.” Also in the tenth bequest, in said instrument, which now stands thus: “ That it is my will that my negro girl, Spice, shall be set free, at the ago of thirty-five, if my wife, Margaret, should die before that time, if not, to serve to her mistress’s death, and then to be free, by giving sufficient security, and if Spice should have any children they are to be set free at the age of twenty-one ”; in the original stood thus: “ It is my will that my negro girl, Spice, be set free at the age of twenty-five, if my wife, Margaret, should die before that time, if not, to serve to her mistress’s death, and then to be free by giving sufficient security.”
They also found that when the said Patton, by direction of the said John Mc’Crackin, had made the alterations aforesaid, that said Mc’Crackin put his finger on the signature which was to the original instrument, and said he acknowledged it; and said it was now as he wanted it; but did not sign his name to said instrument; nor did the said John Patton attest the said instrument; nor was the other subscribing witness present. They also find that all the body of the said instrument was in the proper handwriting of the said John Patton; they also find that the signature to the will is in the proper handwriting of the said John Mc’Crackin; they also find that the following indorsement on said instrument was made and attested by said Patton, on said will, at the time the alterations were made, to wit: “ February the 2d, 1820, the alteration concerning the negro girl, Spice, was made after
the will was signed, by the consent'of John Mc-Crackin, signed, John Patton ”; which was wholly in .the handwriting of said Patton, as a memorandum to refresh his memory. The Court upon this verdict, established the will as altered, and ordered it to be registered in the County Court.
The plaintiff’s counsel contend that the will is void in toto. The defendant’s counsel contends that the will is good in toto, or so far as it has not been legally revoked.
First, supposing the altered clauses to be a revocation of the original clauses, is it a revocation of all other clauses and of the whole will ?
Secondly, are the altered clauses a valid disposition of the realty according to the old provision and the new addition together ?
Thirdly, if not a valid disposition, can the intent to alter amount to a revocation simply?
First, a desire to alter part is evidence of a satisfaction with all other parts, and proves that the devisor had no disposition or design to revoke *243 these latter parts. And there is nothing in the nature of a will which forces a repeal of the whole, when only a part is the object of dissatisfaction. The testator might say by a new will, I confirm all but such a clause, and revoke that; why not effect the same end by cancellation of the obnoxious clause, or by writing upon the will that such clause shall not stand as a part of his will F What inconvenience follows from the abrogation of part, letting the rest stand in force ? The alteration of a deed, which by its own nature is not revocable, will destroy the deed, because no longer the same contract by which the obligor has agreed to be bound. But a will is always under the power of the testator, to be altered in whole or in part according to his pleasure. And an alteration, either entire or partial, is what no one can complain of as injurious to himself. It is but the innocent use of a privilege which the law has bestowed upon him, to encourage his industry and to keep his dependants in the observance of their duties. Not perceiving any reason for considering the revocation of part to be a revocation of the whole, the opinion which I adopt is, that if the appellants should even prevail to set aside the clauses which the testator attempted to alter, that no other parts of the will would be thereby revoked. In 1 Eq. Cas. Ab. 409, part of the old will was sustained and the rest was superseded or revoked by the new one. In 7 Bac. Ab. 353 and in 356, the original will was established as to the realty, leaving it to be settled afterwards whether the legacies, as altered, should go to the legatees as altered, which examples show that a part may be revoked and the other not.
As to the second question, are the altered clauses a valid disposition of the realty, according to the old provisions and the new additions together ?
The alterations show a desire in the devisor to affirm the devise of the house and lot as it stood in the will first executed, with a reduction of the charge on the devisee from $ 400 to $ 200. But the new disposition is not subscribed by the devisor in the presence of two witnesses, nor do they attest the alteration by a subscription of their names in his presence. The alteration intended has not been completed; the new disposition is not effected, but a nullity; and the clause in the will devising the house remains in the same state as before it was. But it is supposed, though a new disposition has not been effected, that the intent manifested by it to change the former disposition may be considered a revocation, and as leaving the property contained in it undisposed of at all, in which case the heirs-at-law will take it as the property of an intestate. To answer this supposition it must be inquired what a revocation is.
A revocation is direct and simple, or it is indirect and consequential. The first takes place where there is a revocation, and no disposal of the property contained in the clause revoked; but the same is left to the disposal of the law.
*244 It is consequential when, by an effectual subsequent devise, the subject of a former devise is given to a different devisee. The first devise ceases, because there is nothing upon which it can operate. In this instance the revocation is not effected till the subject-matter be differently and effectually disposed of. It is not effected by a purpose or design to dispose differently, unless the purpose or design be perfected. It is laid down by the lord chancellor in 1 Eq. Ca. Ab. 407, that if a man devise lands to A and afterwards makes a second will, and thereby devises the same lands to B, it shall be no revocation of the devise in the first to A; for it is plain that A was to lose only what B was to gain, and if B gains nothing by the second A will lose nothing that was given to him in the first. But if a man execute a second will which appears to have no other intention than to revoke the first and to die intestate, though this second be not in all circumstances duly executed as a will whereby to pass lands, yet it operates as a revocation of the first. In the other instance it is the different disposition, not the purpose, to make it that produces the revocation; nor, indeed, if the purpose were resorted to would it be sufficient. Could it be said that a design to dispose of the property to a new 'devisee is a proof that the devisor intended to die intestate ? He intended to pretermit the heir, and a revocation will introduce the heir. Is it possible, then, to say that there was an intent to revoke, without going in direct opposition to the intent? The quo animo is a principal sign by which to discover whether there be a revocation or not, for without the quo animo there is no revocation. It cannot be contended for a moment that here the will of the testator was to revoke simply and unconnectedly with the new disposition which he intended to make. Would it not be a very unfair construction to defeat this devisee of all that- was intended to be given to him, because in the attempted alteration there is an evident purpose to make the devise more beneficial than before it was? It is most certain that here is no consequential revocation. And as to any direct and simple revocation, independently of a new or substituted devise, it seems almost impossible that it can be contended for as this case is circumstanced; but a few remarks upon' this subject may not be wholly useless.
A parol revocation of a written will was not prohibited in England till the Act of 29, Ch. 2, called the Statute of Frauds and Perjuries. T. T. 409; Litt. § 168; Plow. 344; 3 Rep. 36; 4 Rep. 67; 8 Rep. 82; Dy. 318. In this country it was not prohibited till 1784, ch. 22, § 11. By the Statute of Frauds and Perjuries a revocation simply is required to be in writing, subscribed by the devisor in presence of three witnesses; our Act of 1784 is silent upon the subject. Is it deducible, from the principles of law applied to the provisions of the Act of 1784, that a revocation of a devise executed as required by this Act, subscription by the de-visor in presence of two witnesses, and by their subscription in his *245 presence, should still be revocable by parol as before tbe Act of 1784, or is the contrary deducible ? One consequence of the affirmative would be, that a will executed with all the solemnities which the law requires might be overturned by the oath of a single witness deposing to the' declaration of a devisor made to no other person but himself. The principle of law is that the annihilation of an instrument in general is to be effected by as much solemnity as was necessarily employed in its constitution, otherwise there is more evidence for . the continuance of the thing established than there is for its dissolution. This indicates a rejection of the idea that a revocation by parol is yet practicable. The same is indicated by other signs. If a written will of personalty cannot be revoked by a subsequent nuncupative will, unless proved by two witnesses, can it be revoked by a written will not signed by the testator and not attested by any witness, — by a mere writing made by one witness, by his direction either upon the face of a former will or upon any separate and detached paper ? This evidence of revocation is less weighty than that by a nuncupative will is required to be. And if in that case no revocation is produced, so neither does it seem to be in the other. If a written will of personalty cannot be revoked by a nuncupative will unless proved by two witnesses, though the written will be good without the attestation of two witnesses, is it not inconsistent to say that a written will of realty, executed and attested by the signature of the testator and of two subscribing witnesses, may be revoked by parol directions given or declaration made to one witness only ? These considerations seem to evince that a direct revocation of a devise of realty cannot be made with less ceremony than is requisite to a will of realty.
With regard to that clause of the first will which'respected the freedom of the testator’s slave named Spice, after arrival to the age of twenty-five years, it concerns personalty only. The question is whether such alteration, by his direction, without signature or attestation, is a good bequest. Setting his hand to it would have been a good will of personalty without any attestation of witnesses, as decided, 1 Eq. Ca. Ab. 409, because the statute having not directed any other mode of making a will of personalty than what existed at the common law, the law still continued by which this would have been a good will of personalty. 8 Ch. Rep. p. 155, 161. And if less evidence by the old law than the subscription by the testator would do, such as a mere writing made by him or by his direction, then here is that writing and direction. In 2 H. and M. 467, a memorandum was written by the testator for making alterations in a former will by a new one, comprising the substance of the old will and the memorandum. The new one was prepared and approved of by the testator, but not signed by him. He died, and the draft was lost, but was proved to agree in substance with the original will and memorandum. The original will and memorandum were established as the will of the testator. So *246 here an alteration made in the clause in question by his direction is as good as the draft in that case which had been approved of and lost, and which, if it had not been lost, would have been taken as the will of the testator. Subscription is not indispensable, for if in his own hand without signature that will be sufficient. Swinb. part 4, § 28 ; part 7, § 13 ; 8 Yez. jun. 477. But if written in another hand, it will not be a good will unless proved by witnesses, and then it will, or if it be proved that the testator, speaking of it, declared it to be his will. Here it is written in another handwriting, by one called on to write it, and declared in his presence by the testator to be his will. And this is sufficient proof as to this clause to establish it as a part of the will of the testator. 7 Ba. Ab. 328, § 3.
The original will ought to be established, as to all the clauses but the tenth, and this, as altered, should be established as the will of the testator.
My opinion is, that the sentence'of the Circuit Court should be reversed, and that the sentence of this Court shall be to establish the whole of the original will, but the tenth clause, and that to be established as altered by Patton, by the direction of the testator.
Pece, J.
of'the same opinion.